THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCIT OF VIRGINIA
Norfolk Division

SUMMER CRUMP,

    **Plaintiff,**

v.                                                Civil Action No.: 2:13cv707

TCOOMBS & ASSOCIATES, LLC,           JURY TRIAL DEMANDED
trading as TCASSOCIATES,
TCMP HEALTH SERVICES, LLC,
UNITED STATES DEPARTMENT OF NAVY,
by and through RAY MABUS,
SECRETARY OF DEPT OF THE NAVY,

    **Defendants.**

## SECOND AMENDED COMPLAINT

COMES NOW, the Plaintiff, SUMMER CRUMP ("Ms. Crump"), by counsel, and as for her Second Amended Complaint against the Defendants TCOOMBS & ASSOCIATES, LLC, trading as TCASSOCIATES, TCMP HEALTH SERVICES, LLC, and UNITED STATES DEPT. OF NAVY, by and though RAY MABUS, SECRETARY OF DEPARTMENT OF NAVY, states the following:

### NATURE OF CLAIM, JURISDICTION AND VENUE

1. This is an action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*, to obtain relief for Plaintiff for discrimination in employment by Defendants against Plaintiff because of Plaintiff's disability. Defendants discriminated against Ms. Crump, a qualified individual with a disability, by unlawfully refusing to provide reasonable accommodation to her and failing to engage in an interactive process and negotiate in good faith, and constructively

1

discharged her because of disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973.

2. Jurisdiction of the subject matter of this action is established in this Court by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101 et seq., which incorporates the jurisdiction provisions in Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-5(f)(3), and pursuant to 28 U.S.C. §1331 and 1343.

3. The employment practices hereafter alleged to be unlawful were committed in the Eastern District of Virginia, Norfolk Division.

4. Ms. Crump has satisfied all procedural prerequisites for filing of her claims. Ms. Crump filed a Charge of Discrimination against TCAssociates and TCMP for the unlawful employment practices set forth herein with the U.S. Equal Employment Opportunity Commission within the required time limits specified by law and regulation. Ms. Crump instituted this action within ninety days of receipt of the EEOC Dismissal and Notice of Rights letter. Ms. Crump also commenced an action against the Department of Navy, as her joint employer, pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* for the unlawful employment practices set forth herein, by filing a timely internal EEO charge and complaint within the required time limits specified by law and regulation. Ms. Crump has complied with the administrative remedies under the Rehabilitation Act.

## PARTIES TO THIS ACTION

5. Ms. Crump is a citizen of the United States and a resident of the Commonwealth of Virginia and the City of Norfolk. At all relevant times, Ms. Crump was employed by TCAssociates, TCMP and Navy as joint employers as a Physician Assistant at Sewell's Point Branch Medical Clinic in Norfolk, VA.

6. Ms. Crump is disabled under the ADA within the meaning of 42 U.S.C.A. § 12102(1) because she has a physical impairment that substantially limits one or more of her major life activities.

7. Defendant TCoombs & Associates, LLC, trading as TCAssociates (herein "TCAssociates"), is a Virginia limited liability corporation with its corporate headquarters located in Sterling, VA, and with a local branch office in Norfolk, VA, and an employer as that term is defined in the ADA. At all relevant times, TCAssociates was a contractor of the Department of the Navy.

8. Defendant TCMP Health Services, LLC (hereinafter "TCMP"), is a Delaware limited liability corporation authorized to do business in Virginia, with a local branch office in Norfolk, VA, and is an employer as that term is defined in the ADA. Upon information and belief, at all relevant times TCMP was a subsidiary of TCAssociates and a contractor of the Department of the Navy.

9. Defendant Secretary is sued in his official capacity as Secretary of the United States Department of the Navy ("Navy"), which is a military department and employer pursuant to the Rehabilitation Act of 1973 and to which the Rehabilitation Act of 1973 applies.

10. At all relevant times herein, Ms. Crump was a "federal employee" of Defendant Navy and Defendant Navy was a "joint employer" for purposes of and pursuant to the Rehabilitation Act. The Navy retained for itself sufficient control of the terms, conditions, means and manner of Ms. Crump's employment to be deemed a joint employer. The Navy determined the skills needed and years of experience required for Ms. Crump's position. Ms. Crump was interviewed by both TCMP and the Navy and upon information, the Navy was involved in her selection for the Physician Assistant's position and daily supervision of her

duties. The Navy furnished her office, exam rooms and the equipment she utilized. She was supervised by Dr. Nelson, Medical Director and a Captain in the Navy. The Navy reserved the right to terminate Ms. Crump's employment. The Navy ultimately provided Ms. Crump with and requested that she fill out a Request for Accommodation form, indicating that it intended that Ms. Crump be considered a "federal employee."

## FACTUAL ALLEGATIONS

11. Ms. Crump was employed as a Physician Assistant by TCAssociates, TCMP and Navy since May, 2010 to work as a Physician Assistant at Sewell's Point Branch Medical Clinic in Norfolk, VA, a Navy facility.

12. Ms. Crump suffers from bilateral profound deafness with bilateral cochlear implantation to assist her to hear. Due to a failure of her existing cochlear implants, Ms. Crump underwent a surgical procedure on April 26, 2011 whereby she received a cochlear implant revision.

13. Ms. Crump's last date of work in the Sewell's Point Branch Medical Clinic was April 25, 2011. Ms. Crump's original return to work date was June 13, 2011, which was later extended to and approved for June 20, 2011.

14. Following an audiogram performed by her audiologist, Ms. Crump made a request to TCAssociates and TCMP, on June 17, 2011, for a reasonable accommodation to eliminate unnecessary excessive noise in the clinical environment and an effective and accurate alternative form of telecommunication (over the phone) with patients, colleagues and specialized physicians, so that she could perform the essential requirements of her position. The ability to communicate with patients and other providers, in a timely, effective and accurate fashion, both in person and over the phone, including but not limited to the ability to relay lab and test results,

prescribe new medications and instruct regarding dosage/usage, and explain new tests and lab results, is an essential requirement of her position.

15. TCAssociates and TCMP originally communicated that Ms. Crump could not return to work if she needed any accommodation or if she was unable to work without restrictions.

16. Upon information, however, TCMP and TCAssociates began communicating with the Navy in June, 2011, with respect to TCMP and TCAssociates' evaluation, determination of and response to Ms. Crump's communicated request for accommodation to TCMP and TCA Associates.

17. Defendants TCMP and TCAssociates failed to accommodate either request for accommodation made to them and failed to respond in a timely and reasonable fashion. In late July, 2011, prior to receiving any response from Defendants TCMP and TCAssociates regarding her request for accommodation in connection with communications in noisy or group settings, Ms. Crump withdrew this request, as such accommodations were no longer necessary as she became more acclimated to her implants. However, she maintained her request for accommodation to TCMP and TCAssociates associated with telephone communications, without which she was not permitted to return to work, and provided information to Defendants TCMP and TCAssociates regarding numerous reasonable accommodations, which included American Sign Language Interpreters or video relay service on a video phone or IPAD2 or similar device, which would not have imposed undue hardship and which would have allowed her to perform the essential functions of her position.

18. Defendants TCMP and TCAssociates failed to accommodate her continued request for accommodation associated with telephone communications, failed to respond in a

reasonable fashion and, following a delay of approximately one and one-half months, offered accommodations that were neither reasonable nor effective for Ms. Crump's particular disability in a medical environment. For example, Defendants TCMP and TCAssociates repeatedly offered a telephone attachment or headset as an alternative form of telecommunication, which would only have amplified sound. As explained by Ms. Crump on numerous occasions, Ms. Crump's disability is not volume-related, but instead, related to speech discrimination (ability to differentiate words and sounds), and an attachment/headset would have done nothing to accommodate her disability. The continued offer of the headset as an accommodation reflected a significant lack of understanding of Ms. Crump's condition and request for accommodation and which a reasonable inquiry and investigation would have immediately revealed.

19. Defendants TCMP AND TCAssociates also maintained that Ms. Crump use a non-signing staff person to paraphrase the communications by telephone, despite the risk of likelihood of patient communications being improperly relayed, especially in emergency situations, and of the staff person being physically unavailable when needed, and despite their assertion that this approach was unacceptable as a double duty for the assigned person.

20. In August, 2011, Ms. Crump was advised that her "request for accommodations" had been agreed to and that she would be allowed to return to work, and that all that remained was resolving details regarding the set up. Thereafter, the parties participated in a dialogue by email and other communications with regard to setting up the accommodation, getting the requisite approvals, coordinating between TCMP and the Agency with regard to logistics set up, approvals, and responsibility for the cost for and provision of the accommodation, among other things.

21. On October 12, 2011, Defendant Navy forwarded a written form for Request for Accommodation to Ms. Crump, through TCAssociates and/or TCMP, which Ms. Crump submitted on October 17, 2011 and returned to TCAssociates and/or TCMP as instructed. Ms. Crump requested reasonable accommodations from the Navy in her Request for Accommodations in order to accommodate her inability to communicate over the telephone due to her disability, including American Sign Language Interpreters or video phone or other device. These accommodations were reasonable under the ADA and the Rehabilitation Act, and no undue hardship would have been imposed upon Navy through their provision of these accommodations.

22. In October 2011, in an effort to prompt a reasonable dialogue, Ms. Crump requested a conference between the Navy, TCAssociates and/or TCMP and herself to discuss the accommodations necessary, details regarding set up, and attempt to come to a resolution, and the Defendants agreed to participate in such a conference. Defendant Navy requested an agenda from Ms. Crump prior to the conference, which Ms. Crump submitted. Ms. Crump was advised that Defendants agreed to the conference to discuss the requested accommodations and the technical requirements of the phone devices requested.

23. Based upon the representations made by Defendants regarding the approval of the request for accommodation and their participation in a conference, Ms. Crump reasonably believed in the following months that the parties remained interested in resolving the issues and engaging in an interactive process to resolve the issues, and she did not receive any communication from the Navy to indicate that that was not the case. Upon information, the Navy investigated her requests following receipt of the agenda, including technological considerations of the requested devices.

24. However, by February 21, 2012, the conference had not taken place and Ms. Crump had not received a response from the Navy to her October 17, 2011 Request for Accommodation or information regarding when a meeting would take place, and by letter dated February 22, 2012, Ms. Crump advised the Navy that if it did not respond within ten (10) days of receipt of the letter, she would consider the request for accommodation to be denied and would proceed with consulting a counselor pursuant to 29 CFR 1614.105 in order to resolve the matter. She received no response and instituted an action against the Navy pursuant to the Rehabilitation Act.

25. Upon information, on or about May 24, 2012, the Navy sent a response to Ms. Crump's October 17, 2011 request for accommodation directly to TCAssociates and/or TCMP, and did not provide a copy directly to Ms. Crump. TCAssociates and/or TCMP withheld this communication from Ms. Crump, and Ms. Crump did not receive a copy until a June 15, 2012 meeting with an EEO Counselor in connection with her claim against the Navy.

26. For the first time in its May 24, 2012 letter, approximately 7 months after she first requested accommodations from the Navy, the Navy (and TCAssociates and/or TCMP, through agreement) proposed the use of "sign language services" and/or a Z150 video phone, but failed to submit a request for the phone which was necessary before it could be approved by the Navy, such that the Defendants could offer no assurances that the Z150 would be approved or a date by which the Z150 could be approved, ordered, installed or operational, and provided no information regarding the same.

27. Defendants likewise could give no assurance to Ms. Crump regarding the medical qualifications, certifications or credentials of the interpreters, with such being necessary in the medical profession, or their availability on short notice in a medical treatment setting. In an

effort to further prompt a reasonable dialogue, Ms. Crump provided a list of interpreters with appropriate medical backgrounds who would have been a reasonable form of accommodation, but no response was received.

28. Although the Z150 video phone was neither approved, installed nor operational as of June 19, 2012, Ms. Crump communicated that she was willing to try the device as an accommodation if it were ultimately approved and Defendants advised her that they would keep her updated. In the months that followed, Defendants never communicated to Ms. Crump that any "sign language services" were available, or that the Z150 was approved, installed or operational. In fact, it was not communicated to Ms. Crump that the Z150 video phone was approved and operational until approximately 21 months after her first communications regarding her needs for accommodation.

29. As of July 27, 2012, Defendants failed to institute any accommodations, either temporary or long term, which would allow Ms. Crump to return to work, receive pay and earn a livelihood or to agree to any long term solutions, unreasonably delayed the taking of steps to resolve the matter, failed to meet with Ms. Crump to attempt to resolve the matter, failed to broker a meeting between TCAssociates and/or TCMP, the Navy and Ms. Crump, failed to respond to communications or otherwise participate in good faith in an interactive process, resulting in a failure to identify appropriate accommodations, and failed to negotiate in good faith, demonstrating a deliberate, intentional effort to force Ms. Crump's resignation and creating impossible and intolerable working conditions, thereby forcing Ms. Crump to quit her job effective that day.

30. Through her constructive discharge on July 27, 2012, Ms. Crump continued to communicate frequently with Defendants regarding her desire to return to work and

accommodations that she requested in order to do so, during which time Ms. Crump received no reasonable cooperation or reasonable response to her requests from either TCAssociates, TCMP or the Navy, and Defendants failed and refused to cooperate in resolving the request for accommodation, ultimately leading to Ms. Crump's constructive discharge.

31. Defendants' actions, lack of cooperation and hostility to her disability made Ms. Crump fearful to return to work out of concern for retaliation, such concern being reasonable based upon the conditions created by Defendants. This fear was buttressed by TCAssociates and/or TCMP's March 19, 2012 written threat of a claim for damages against Ms. Crump based upon her counsel's communications with the Navy regarding resolving her request for accommodation and the exercise of Ms. Crump's statutory right to seek documents pursuant to the Freedom of Information Act from the Navy, such documents being directly related to Ms. Crump's claim against the Navy as her "joint employer" pursuant to the Rehabilitation Act.

32. Defendants engaged in their discriminatory practices intentionally, with malice or reckless indifference to the federally protected rights of the plaintiff.

## COUNT I

### DISCRIMINATION/FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

**(TCAssociates and TCMP)**

33. Ms. Crump incorporates and relies upon the averments stated in the previous paragraphs as if same were fully restated in Count I.

34. At all relevant times, Ms. Crump suffered from a cognizable disability, of which Defendants had notice; with reasonable accommodation could perform the essential functions of the position for which she was hired; and Defendants refused to make such accommodations.

35. Defendants intentionally discriminated against Plaintiff because of her disability in violation of the ADA, including but not limited to by failing to make reasonable accommodation, and failing to adequately engage in an interactive process and negotiate in good faith, resulting in the failure to identify an appropriate accommodation.

36. The effect of the practices complained of herein has been to deprive Ms. Crump of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability.

37. As a direct and proximate result of Defendants' actions, Ms. Crump has suffered and continues to suffer and will in the future suffer injury and damages, including lost wages, continuing medical education expenses, lost paid time off, job search and other professional expenses, temporary housing and travel expenses, additional childcare expenses, mileage, credit card finance charges, and impact on retirement and investment income and 401k withdrawals and penalties, and other financial losses, as well as damage to professional reputation, loss of opportunities for advancement due to the prolonged period of unemployment, emotional pain and suffering, emotional distress, inconvenience, mental anguish, embarrassment, loss of self-esteem, loss of enjoyment of life, anxiety, stress, injury to professional standing, character and reputation, injury to credit and financial anxiety, attorneys fees, consequential damages and other injury.

## COUNT II

## CONSTRUCTIVE DISCHARGE
## IN VIOLATION OF ADA

**(TCAssociates and TCMP)**

38. Ms. Crump incorporates and relies upon the averments stated in the previous paragraphs as if same were fully restated in Count II.

39. By their actions, including by their failure to reasonably accommodate in excess of one year after initial request, delays and failures in communicating and attempting to resolve the request for accommodation, and threats of legal action for exercising Ms. Crump's statutory right to seek documents pursuant to the Freedom of Information Act from the Navy, Defendants intentionally and deliberately made Ms. Crump's working conditions intolerable, thereby forcing her to quit her job.

40. The effect of the practices complained of herein has been to deprive Ms. Crump of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability.

41. As a direct and proximate result of Defendants' actions, Ms. Crump has suffered and continues to suffer and will in the future suffer injury and damages, including lost wages, continuing medical education expenses, lost paid time off, job search and other professional expenses, temporary housing and travel expenses, additional childcare expenses, mileage, credit card finance charges, and impact on retirement and investment income and 401k withdrawals and penalties, and other financial losses, as well as damage to professional reputation, loss of opportunities for advancement due to the prolonged period of unemployment, emotional pain and suffering, emotional distress, inconvenience, mental anguish, embarrassment, loss of self-esteem, loss of enjoyment of life, anxiety, stress, injury to professional standing, character and reputation, injury to credit and financial anxiety, attorneys fees, consequential damages and other injury.

## COUNT III

### DISCRIMINATION/FAILURE TO ACCOMMODATE
### IN VIOLATION OF REHABILITATION ACT

**(Navy)**

42. Ms. Crump incorporates and relies upon the averments stated in the previous paragraphs as if same were fully restated in Count III.

43. At all relevant times, Ms. Crump suffered from a cognizable disability, of which Defendant had notice; with reasonable accommodation could perform the essential functions of the position for which she was hired; and Defendant refused to make such accommodations.

44. Defendant Navy intentionally discriminated against Plaintiff because of her disability in violation of Sections 501 and 504 of the Rehabilitation Act, including but not limited to by failing to make reasonable accommodation and failing to engage in an interactive process and negotiate in good faith, resulting in the failure to identify an appropriate accommodation.

45. The effect of the practices complained of herein has been to deprive Ms. Crump of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability.

46. As a direct and proximate result of Defendant's actions, Ms. Crump has suffered and continues to suffer and will in the future suffer injury and damages, including lost wages, continuing medical education expenses, lost paid time off, job search and other professional expenses, temporary housing and travel expenses, additional childcare expenses, mileage, credit card finance charges, and impact on retirement and investment income and 401k withdrawals and penalties, and other financial losses, as well as damage to professional reputation, loss of opportunities for advancement due to the prolonged period of unemployment, emotional pain

and suffering, emotional distress, inconvenience, mental anguish, embarrassment, loss of self-esteem, loss of enjoyment of life, anxiety, stress, injury to professional standing, character and reputation, injury to credit and financial anxiety, attorneys fees, consequential damages and other injury.

## COUNT IV

## CONSTRUCTIVE DISCHARGE
## IN VIOLATION OF REHABILITATION ACT

**(Navy)**

47. Ms. Crump incorporates and relies upon the averments stated in the previous paragraphs as if same were fully restated in Count IV.

48. By its actions, including by its failure to reasonably accommodate in excess of one year after initial request, including its failure to provide any approved and operational accommodation prior to discharge, as well as its delays and failures in communicating and attempting to resolve the request for accommodation, Defendant intentionally and deliberately made Ms. Crump's working conditions intolerable, thereby forcing her to quit her job.

49. The effect of the practices complained of herein has been to deprive Ms. Crump of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability.

50. As a direct and proximate result of Defendant's actions, Ms. Crump has suffered and continues to suffer and will in the future suffer injury and damages, including lost wages, continuing medical education expenses, lost paid time off, job search and other professional expenses, temporary housing and travel expenses, additional childcare expenses, mileage, credit card finance charges, and impact on retirement and investment income and 401k withdrawals and penalties, and other financial losses, as well as damage to professional reputation, loss of

opportunities for advancement due to the prolonged period of unemployment, emotional pain and suffering, emotional distress, inconvenience, mental anguish, embarrassment, loss of self-esteem, loss of enjoyment of life, anxiety, stress, injury to professional standing, character and reputation, injury to credit and financial anxiety, attorneys fees, consequential damages and other injury.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A. For issuance of an Order that the Defendants' actions described herein violated the ADA and Rehabilitation Act, as applicable.

B. For appropriate compensatory damages against Defendants for pecuniary losses to include for lost wages, including back and front pay, future lost earnings, and benefits, and for emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life, and any other non-pecuniary losses, in amounts to be proved at trial.

C. For appropriate equitable relief including retroactive relief for lost back pay and benefits, pre and post judgment interest, prospective relief for the value of reinstatement and injunctive relief to compel Defendants to institute more responsive processes, to provide training on issues related to reasonable accommodations and such other issues as the Court deems just and necessary.

D. For appropriate punitive damages against Defendants for violations of Counts I - IV.

E. For an award of reasonable attorneys fees and costs, including expert witness fees and costs of this action.

F. For an award of pre-judgment and post-judgment interest.

15

G. And for such additional legal and equitable relief as the Court deems appropriate.

THE PLAINTIFF RESPECTFULLY HEREBY DEMANDS A TRIAL BY JURY.

Respectfully submitted,

SUMMER CRUMP

/s/ Ann K. Sullivan
Ann K. Sullivan, VSB No. 17762
Melissa M. Picco, VSB No. 43046
Deborah Yeng Collins, VSB No. 82835
SULLIVAN LAW GROUP, PLC
440 Monticello Avenue, Suite 1810
Norfolk, Virginia 23510
(757) 955-8545
(757) 955-8501 (fax)
asullivan@asksullivan.com
mpicco@asksullivan.com
dcollins@asksullivan.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 8th day of May, 2015, I electronically filed the foregoing Second Amended Complaint with the Clerk of the Court for the Eastern District of Virginia using the CM/ECF system that will send notification of such filing to the following:

      Adrien C. Pickard, VSB No. 65833
      Blank Rome, LLP
      600 New Hampshire Avenue, NW
      Washington DC, 20037
      Phone: 202-772-5845
      Fax: 202-572-1430
      Email: apickard@blankrome.com
      *Counsel for TCoombs & Associates, LLC and TCMP Health Services LLC*

      Kent P. Porter, VSB No. 22853
      Virginia VanValkenburg, VSB No. 33258
      Office of the United States Attorney General
      101 West Main Street, Suite 8000
      Norfolk, VA 23510
      (757) 441-6331
      (757) 441-6689 (fax)
      Kent.Porter@usdoj.gov
      Virginia.VanValkenburg@usdoj.gov
      *Counsel for Federal Defendant*

      D'Ontae D. Sylvertooth, NM Bar No. 142994
      Office of the General Counsel
      U.S. Navy Bureau of Medicine and Surgery
      5113 Leesburg Pike
      4 Skyline Place, Suite 602
      Falls Church, VA 22041
      dontae.d.sylvertooth.civ@mail.mil
      *Counsel for Federal Defendant, Pro Hac Vice*

      /s/ Ann K. Sullivan
      Ann K. Sullivan, VSB No. 17762
      Melissa M. Picco, VSB No. 43046
      Deborah Yeng Collins, VSB No. 82835
      SULLIVAN LAW GROUP, PLC
      440 Monticello Avenue, Suite 1810
      Norfolk, Virginia 23510
      (757) 955-8545
      (757) 955-8501 (fax)
      *Counsel for Plaintiff*