

FILED

MAR 2 7 2017

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SUMMER CRUMP,

      Plaintiff,

v.                           Civil Action No. 2:13cv707

UNITED STATES DEPT OF NAVY,
by and through RAY MABUS,
SECRETARY OF DEPT OF NAVY,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on motions filed by
Plaintiff, Summer Crump, seeking attorney's fees, ECF No. 340,
and seeking supplemental attorney's fees, ECF No. 372. Such
motions are filed pursuant to 29 U.S.C. § 794a(b), and are
predicated on Plaintiff's success in obtaining a jury verdict in
her favor and the Court's subsequent grant of back pay.
Defendant, United States Department of Navy ("the Navy"), filed
a responsive brief acknowledging that Plaintiff may be eligible
as a prevailing party to seek attorney's fees, but arguing that
the Court should nevertheless not award her any attorney's fees
due to her minimal recovery in the instant case. ECF No. 361.
For the reasons discussed below, Plaintiff's motion seeking
attorney's fees and motion seeking supplemental attorney's fees

are **GRANTED**, but the amount of such award is less than Plaintiff seeks.

## I. Factual and Procedural Background

Plaintiff suffers from bilateral profound sensorineural hearing loss, and has utilized cochlear implants for approximately fifteen years. Nov. 30, 2016 Mem. Order 2, ECF No. 368 ("Nov. 2016 Order");[1] see also Sept. 8, 2016 Op. and Order 2, ECF No. 337 ("Sept. 2016 Op.") (internal citations omitted). After obtaining such cochlear implants, Plaintiff became a licensed physician assistant. Nov. 2016 Order at 2. With the assistance of her cochlear implants, Plaintiff was generally able to hear and speak without further assistance. Plaintiff was hired by TCoombs & Associates, LLC and TCMP Health Services, LLC (collectively "TCA") to begin providing physician extender services on or about June 3, 2010 at the Navy's Sewells Point Clinic, pursuant to a contract between TCA and the Navy. Id. In providing these services, TCA and the Navy jointly employed the Plaintiff, as this Court previously found, for purposes of determining liability under the Rehabilitation Act of 1973. Id. (citing Sept. 22, 2015 Op. and Order, ECF No. 183 ("Sept. 2015 Op.")).

---

[1] These facts are essentially a re-statement of those summarized in the Court's Memorandum Order of November 30, 2016. ECF No. 368.

Plaintiff left her position at Sewells Point Clinic, on unpaid leave under the Family and Medical Leave Act ("FMLA"), to have cochlear implant revision surgery on or about April 26, 2011, after she began experiencing significant hearing deficits. Id. (citing Sept. 2016 Op. at 4). As of July 2011, Plaintiff's full hearing capabilities had not yet returned. Id. Plaintiff therefore requested an accommodation to be successful in returning to work at Sewells Point Clinic, including reduced noise levels and use of a video relay service (rather than a teletype service) for communication on the telephone. Id. at 3. At the most basic level of description, with a teletype service, also referred to as a TTY, a hearing impaired person calls a communications assistant ("CA") who then calls the recipient, and communications are typed by the hearing impaired person and spoken by the CA. With a video relay service ("VRS"), the communications between the hearing impaired person and interpreter are signed, using American Sign Language ("ASL"), by way of a video monitor, and the hearing impaired person can use her own voice and utilize any residual hearing capacity to hear the voice of the hearing person. Plaintiff sought a VRS, not a TTY. She began seeking such accommodation and return to work in June 2011. Id.

Plaintiff believed that her request for a videophone had been approved by the Navy in August 2011, but also understood

she could not return to work until such videophone had been installed. Id. (citing Excerpts Trial Tr. 22-23, ECF No. 334; Excerpts Trial Tr. 300, 308, ECF No. 332; Trial Tr. 7, ECF No. 358; Agreed Ex. 55, 30). But, because of numerous challenges involving technology compatibility and lack of effective communication, installation was not accomplished by October 2011. Id. As explained in the Court's September 8, 2016 Opinion and Order, after Plaintiff communicated with TCA and the Navy between August and October 2011 about her request for accommodation, in October 2011, Plaintiff again submitted her requests for accommodation on a form provided to her by the Navy. Id. at 4 (citing Sept. 2016 Op. at 6-7). The Navy contended that it relayed several accommodation offers to Plaintiff, through TCA, and that on December 16, 2011, TCA relayed one of these offers, involving the Virginia Relay Service that works with TTY phones, to Plaintiff. Id. (citing Navy's Opening Br. 6-7, ECF No. 348). The Navy contended that this was an offer of TTY at the Military Acute Care Department ("MACD") clinic, and that it was a reasonable accommodation. Plaintiff responded by asserting that the December 16, 2011 email from TCA was not a formal accommodation offer because it did not comply with Navy procedures and it did not come from an authorized decision-maker. Id. (citing Pl.'s Resp. Br. 15-16, ECF No. 359). Moreover, Plaintiff contended that she still

4

believed in December 2011 that the Navy had agreed in August 2011 to provide her with a VRS, that the Navy was trying to make such arrangements, that the December 16, 2011 email was not a withdrawal of that August 2011 offer, and that the Navy just had not finalized the provision of the offered VRS.  Id.  Plaintiff contended that a reasonable juror could conclude that the Navy did not offer TTY until June 15, 2012, when Plaintiff received a May 24, 2012 official letter from an authorized decision-maker offering a TTY, and also offering as an additional/alternative accommodation a specific model of videophone she had earlier requested.  Id. at 5.  Moreover, Plaintiff contended that even if the December 16, 2011 email was an actual accommodation offer, it was not a reasonable accommodation.  Id.

After further communication from December 2011 through July 2012, and with no notification that an agreed-upon videophone was installed and functional, Plaintiff resigned from TCA on July 27, 2012, and communicated her resignation to the Navy on August 9, 2012, formally rejecting the Navy's offer of accommodation.  Id. (citing Sept. 2016 Op. at 10).  While she was unable to return to work at Sewells Point Clinic, Plaintiff began to seek work elsewhere.  Sept. 2016 Op. at 11.  At the time that she communicated her resignation to TCA, Plaintiff had already begun working at other medical facilities and continued doing so after her resignation from TCA.  Id. at 11-15.

On December 19, 2013, Plaintiff brought suit against TCA and the Navy based upon their alleged failure to reasonably accommodate Plaintiff's disability.    Compl., ECF No. 1. Plaintiff sought compensatory damages for lost wages, future lost earnings and benefits, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. Id. at 15.    Plaintiff also requested injunctive relief to compel the Navy to institute "more responsive processes, [and] to provide training on issues related to reasonable accommodations," punitive damages, attorney's fees and costs, and pre-judgment and post-judgement interest.    Id.    On the morning that the jury trial began, February 16, 2016, co-defendant/joint employer TCA settled with Plaintiff, leaving the Navy as the sole defendant.    Nov. 2016 Order at 5 (citing Trial Min., ECF No. 304; Stipulation of Dismissal, ECF No. 18).

Following a two-week jury trial, the jury returned a verdict in Plaintiff's favor, finding that the Navy failed to provide Plaintiff a reasonable accommodation, but awarded Plaintiff no compensatory damages.    Verdict Form, ECF No. 314. Following the conclusion of the trial, the Court heard additional evidence on Plaintiff's request for equitable relief. On September 8, 2016, after the issue of equitable relief was fully briefed, the Court issued an Opinion and Order awarding back pay damages to Plaintiff in the amount of $40,842.42 plus

6

pre-judgment and post-judgment interest. Sept. 2016 Op. at 80 (internal citations omitted). The Court requested the Clerk of Court to enter judgment on the jury's verdict, id. at 81, and judgment was entered the same day, J. in a Civ. Case, ECF No. 338. Plaintiff thereafter filed a motion for attorney's fees, ECF No. 340, and, following the Court's ruling on the Navy's motion for judgment as a matter of law, ECF No. 368, Plaintiff filed a motion for supplemental attorney's fees, ECF No. 372. Having been fully briefed, this issue is ripe for review.

## II. Standard for Attorney's Fee Award

### A. Entitlement to Fee Award

Traditionally, under the "American Rule," each party in a lawsuit bears its own attorney's fees unless a statute explicitly authorizes otherwise. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). The instant civil case was filed pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq., seeking to remedy an alleged failure to reasonably accommodate Plaintiff's medical disability. Compl. ¶ 1. Congress authorized courts to award reasonable attorney's fees to the "prevailing party" under this statute, see 29 U.S.C. § 794a(b), and it is undisputed that Plaintiff qualifies as a "prevailing party" in this case, Farrar v. Hobby, 506 U.S. 103, 111 (1992) (holding that a "prevailing party" is one who has obtained "at least some relief on the merits of his claim" such that the

7

legal relationship between the parties has changed);[2] Def.'s Resp. Br. 6, ECF No. 361 ("The Navy does not dispute Plaintiff's formal status as a prevailing party."). Because Plaintiff qualifies for reasonable attorney's fees as a prevailing party, the Court must determine what a "reasonable attorney's fee" is in this case. 29 U.S.C. § 794a.

### B. Calculation of "Reasonable" Fee Award

The Fourth Circuit has outlined a three step framework for calculating a reasonable attorney's fee:

> First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Id. at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Id. at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id.

McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014) (footnote omitted).

---

[2] The Court notes that many of the cases cited throughout this Opinion and Order analyze statutes authorizing attorney's fees in contexts different from the instant case. However, the United States Supreme Court has noted that the same legal standards for attorney's fee awards are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" Hensley, 461 U.S. at 455 n.7; Brinn v. Tidewater Transp. Dist. Comm'n, 242 F.3d 227, 234 (4th Cir. 2001) ("Because of the scarcity of case law interpreting . . . § 794a(b), courts faced with the task have relied on the body of law interpreting federal civil rights attorney's fees provisions.").

The calculation of a lodestar figure is "[t]he most useful starting point for determining the amount of a reasonable fee," because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley, 461 U.S. at 433; see Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (characterizing the lodestar calculation as "the guiding light of . . . fee-shifting jurisprudence") (quotation marks and citation omitted). The fee applicant bears the burden of proving the reasonableness of the hours expended and the requested hourly rates, which generally requires submission of the attorney's own affidavit and timesheets as well as "'satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [the attorney] seeks an award.'" Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)). In evaluating the submissions in order to determine both a reasonable rate and a reasonable number of hours expended, the lodestar analysis is guided by the following twelve factors (the "Johnson factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the

9

experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and
length of the professional relationship between
attorney and client; and (12) attorneys' fees awards
in similar cases.

Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir.
1978) (adopting the twelve factors identified by the Fifth
Circuit in Johnson v. Georgia Highway Express Inc., 488 F.2d 714
(1974)); cf. Perdue, 559 U.S. at 550-52 (explaining why the
objective lodestar approach is superior to the subjective
approach outlined in Johnson, but failing to hold that it is
improper to be informed by the Johnson factors when performing a
lodestar analysis). Because precedent of the United States
Court of Appeals for the Fourth Circuit requires this Court to
be guided by the Johnson factors in determining the lodestar
figure, "to the extent that any of the Johnson factors has
already been incorporated into the lodestar analysis," such
factor(s) should not later be considered a second time to make
an upward or downward adjustment to the lodestar figure because
doing so would "inappropriately weigh" such factor. McAfee, 738
F.3d at 91.

The second step in the fee calculation procedure requires
the Court to exclude fees for counsel's time spent on
unsuccessful claims that are unrelated to the successful claims.
Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 244 (4th

10

Cir. 2009); see Hensley, 461 U.S. at 435 ("The congressional intent to limit awards to prevailing parties requires that . . . [unrelated claims based on different facts and legal theories] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s]."). The Supreme Court has recognized that "[i]t may well be that cases involving such unrelated claims are unlikely to arise with great frequency," because "[m]any civil rights cases will present only a single claim," and in other cases, the claims "will involve a common core of facts or will be based on related legal theories." Hensley, 461 U.S. at 435. In such latter circumstance, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," with the nature of the lawsuit precluding it from being "viewed as a series of discrete claims." Id.

The third and final step, after a lodestar calculation has been made and any unsuccessful efforts on unrelated claims have been excluded, requires the Court to award "'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" Grissom, 549 F.3d at 321 (quoting Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)). It is appropriate for the Court to reduce an award at this third step of the analysis if "'the relief, however significant, is limited

11

in comparison to the scope of the litigation as a whole.'" McAfee, 738 F.3d at 92 (quoting Hensley, 461 U.S. at 439-40). "What the court must ask is whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'"  Id. (quoting Hensley, 461 U.S. at 434).  Accordingly, when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," even in cases "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  Hensley, 461 U.S. at 436.  An attorney's fee award is therefore not driven by whether it was reasonable to file suit or whether plaintiff's counsel litigated the case "with devotion and skill"; rather, "the most critical factor is the degree of success obtained."  Id.

### III. Discussion

#### A. Entitlement to Fee Award

It is undisputed that Plaintiff is a "prevailing party." Def.'s Resp. Br. 6.  As a prevailing party, Plaintiff requests over $1.2 million in attorney's fees:

| Sullivan Law Group – Litigation | $1,002,481.00 |
| Sullivan Law Group – Fee Petition | $40,446.50 |
| Crenshaw, Ware & Martin | $16,227.00 |
| David Pearline[3] | $64,968.75 |
| Sullivan Law Group – Supplemental Motion | $76,895.50 |
| David Pearline – Supplemental Motion | $15,875.00 |
| **TOTAL** | **$1,216,893.75** |

Pl.'s Opening Br. 16-17, ECF No. 341; Pl.'s Suppl. Opening Br. 2-3, ECF No. 373. Status as a prevailing party makes Plaintiff "eligible for, rather than entitled to, an award of attorney's fees." Mercer v. Duke Univ., 401 F.3d 199, 203 (4th Cir. 2005). The Navy contends that Plaintiff only obtained "nominal damages" because she failed to obtain the significant monetary damages that she sought, and therefore she "is not entitled to an award of attorney's fees." Def.'s Resp. Br. 6.

A plaintiff obtains nominal damages when a "trifling sum" is awarded because "a legal injury is suffered but there is no substantial loss or injury to be compensated." Damages, Black's Law Dictionary (10th ed. 2014); see Farrar, 506 U.S. at 112 (recognizing that nominal damages are awarded to vindicate legal rights while substantial damages are awarded "to compensate actual injury"); McAfee, 738 F.3d at 88 n.6 ("An award of

---

[3] There was an error in the calculation of David Pearline's fee request as stated in Plaintiff's opening brief. Pl.'s Reply Br. 3 n.1.

nominal damages signifies [violation of a legal] right but has not proved actual loss."); W. Insulation, LP v. Moore, 316 F. App'x 291, 298 (4th Cir. 2009) ("Nominal damages do not, by definition, compensate the aggrieved party—they merely recognize that the aggrieved party's rights have been violated."); Price v. City of Charlotte, N.C., 93 F.3d 1241, 1246 (4th Cir. 1996) ("A plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar."). When a plaintiff prevails but "recovers only nominal damages because of [a] failure to prove an essential element of [the] claim for monetary relief, the only reasonable fee is usually no fee at all," because the recovery of only nominal damages indicates that the legal victory was purely "technical" or "de minimis." Farrar, 506 U.S. at 115 (emphasis added) (internal citation omitted); see also 29 U.S.C. § 794a ("[T]he court, in its discretion, . . . may allow the prevailing party, a reasonable attorney's fee.") (emphasis added).

However, not every award of nominal damages represents a merely de minimis or purely "technical" legal victory. As Justice O'Connor explained in her Farrar concurring opinion, "[not] all nominal damages awards are de minimis. Nominal relief does not necessarily a nominal victory make." Farrar, 506 U.S. at 121 (J. O'Connor, concurring). To identify when a party who has obtained only a nominal damages award has nevertheless still

obtained more than a *de minimis* or technical legal victory, Justice O'Connor offered three factors for courts to consider: (1) the extent of relief sought compared to the relief obtained; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose served by the litigation. Id. at 122. The Fourth Circuit adopted Justice O'Connor's three-factor test to distinguish "the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an award of attorney's fees." Mercer, 401 F.3d at 204; see also Doe v. Kidd, 656 F. App'x 643, 656 (4th Cir. 2016), cert. denied, No. 16-530, 2017 WL 69234 (U.S. Jan. 9, 2017) (applying Justice O'Connor's three-factor test to a case in which the plaintiff prevailed but received no damage award); Kane v. Lewis, No. 16-1140, 2017 WL 128503, at *5 (4th Cir. Jan. 13, 2017) ("The district court abused its discretion by failing to evaluate the three factors this court has adopted for determining whether a nominal-damages award warrants attorney's fees.").

Here, the Navy contends that Plaintiff should not be awarded attorney's fees because application of Justice O'Connor's three factors shows that Plaintiff received only "nominal damages" and achieved only a *de minimis* victory. Def.'s Resp. Br. 6-7. According to the Navy, Plaintiff's recovery was "nominal" and represented a *de minimis* victory

15

because the "monetary recovery was between 3% and 4% of what she sought ($40,842.42 awarded versus almost $1.2 million initially sought)," Plaintiff did not prevail on a significant legal issue, and the litigation achieved no public purpose. Id. at 3, 6-14. While it is true that the jury returned a verdict in Plaintiff's favor but awarded her no compensatory damages, the Court awarded Plaintiff back pay damages of $40,842.42, plus pre-judgment and post-judgment interest, for her lost wages between February 26, 2012 and July 27, 2012. Sept. 2016 Op. at 80. Notwithstanding what Defendant characterizes as Plaintiff's "relatively meager recovery," Def.'s Resp. Br. at 2, because the Court's award of back pay was designed to compensate Plaintiff for her lost wages as a result of the Navy's actions, Sept. 2016 Op. at 76, Plaintiff obtained more than a mere nominal damage award, see Farrar, 506 U.S. at 121 (plaintiff who requested $17 million and received $1 only received nominal damages); Mercer, 401 F.3d at 202 ($1 dollar was a nominal damage award); cf. McAfee, 738 F.3d at 88 n.6 (rejecting defendant's argument that a damages award was nominal when, "though small in dollar amount," the award nevertheless represented the entirety of the plaintiff's out-of-pocket expenses).

As Plaintiff is a prevailing party who obtained more than an award of nominal damages, the Court is not required to

16

consider whether her legal victory was more than *de minimis*.[4]
Therefore, the Court moves on to the issue of Plaintiff's
entitlement to reasonable attorney's fees.  See Farrar, 506 U.S.
at 114 (internal quotation marks omitted) (noting that once a
plaintiff is entitled to attorney's fees, "the degree of the
plaintiff's overall success goes to the reasonableness of a fee
award").

---

[4] The Court notes that even if Plaintiff's damages award could be considered
"nominal," after application of Justice O'Connor's three-factor test, it is
apparent that Plaintiff achieved more than a *de minimis* legal victory in the
litigation and thus it would be appropriate to award Plaintiff attorney's
fees.    First, while Plaintiff received a substantially smaller monetary
recovery than she initially requested, her award of $40,842.42 in back pay
damages is not insignificant.    See McAfee, 738 F.3d at 84 (holding that,
under Mercer and Farrar, an award of $100,000 in attorney's fees was
reasonable when the plaintiff recovered only $2,943.60 in damages).    Next,
Plaintiff prevailed on significant legal issues throughout the litigation,
such as the Court's summary judgment ruling that, based upon the facts before
it, there was a genuine issue of material fact regarding the reasonableness
of TTY as an accommodation in the factual circumstances of this case.    Sept.
2015 Op. & Order 113-14 ("Consequently, while a TTY or other non-video TRS
system might qualify as a reasonable accommodation for hearing-impaired
individuals in most jobs . . . on the specific facts of this case, the Court
cannot find, as a matter of law, that a TTY or other non-video TRS system was
a reasonable accommodation to Plaintiff." (internal citations omitted)); see
Heyer v. United States Bureau of Prisons, No. 15-6826, 2017 WL 715823, at *3
(4th Cir. Feb. 23, 2017) ("TTY does not permit real-time conversations, and
each conversation over a TTY device takes significantly longer than signed or
spoken conversations. . . . TTY is old technology that is fast becoming
obsolete.").    Moreover, the jury found that, based upon the evidence before
it, the Navy failed to provide Plaintiff a reasonable accommodation, Nov.
2016 Mem. Order 8, ECF No. 368, and the Court held that "a reasonable jury
could have concluded that, on these facts, an offer of TTY was not a
reasonable accommodation for Plaintiff," id. at 16.
    Finally, Plaintiff's victory served a public purpose in defining the
responsibilities of joint employers to offer reasonable accommodation, which
may be more than TTY, to medical professionals in similar health care
facilities.    Thus, Justice O'Connor's three factors, as adopted by the Fourth
Circuit in Mercer, weigh in favor of finding that, even if Plaintiff's
recovery could be considered "nominal," it was not a *de minimis* or purely
technical legal victory.    Therefore, Plaintiff is entitled to a reasonable
attorney's fee—with her relative degree of success considered as part of any
adjustment to the lodestar figure.

## B. Calculation of "Reasonable" Fee Award

### 1. Lodestar Analysis

The first step in calculating a reasonable fee is to determine the "lodestar" figure "by multiplying the number of reasonable hours expended times a reasonable rate." McAfee, 738 F.3d at 88 (quoting Robinson, 560 F.3d at 243).

### a. Reasonable Rate

As indicated above, Plaintiff is entitled to attorney's fees as a prevailing party who was awarded more than nominal damages. A party entitled to recover attorney's fees "bears the burden of establishing the reasonableness of the hourly rates requested." Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987). "The reasonable rate is 'to be calculated according to the prevailing market rates in the relevant community.'" LaFleur v. Dollar Tree Stores, Inc., 189 F. Supp. 3d 588, 596 (E.D. Va. 2016) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). This is generally accomplished "through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the [relevant] market.'" Project Vote/Voting for America, Inc. v. Long, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting Spell, 824 F.2d at 1402). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action

18

is prosecuted sits." <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 175 (4th Cir. 1994). Here, both parties have submitted affidavits from disinterested counsel indicating the hourly rates they purport to be reasonable. <u>Compare</u> Pl.'s Opening Br. Ex. 3, Butler Decl., ECF No. 341-3; Pl.'s Opening Br. Ex. 4, Shoemaker Decl., ECF No. 341-4; <u>with</u> Def.'s Resp. Br. Ex. 1, Buckius Decl., ECF No. 361-1. Additionally, Plaintiff has submitted affidavits for each attorney and paralegal that describes their relevant work experience. <u>See generally</u> Pl.'s Ex., ECF No. 341.

Plaintiff requests the following hourly rates for the attorneys who worked on the case: $400 for Ann Sullivan, law firm founding partner with thirty-nine years of experience; $315 for Melissa Picco, senior associate with nineteen years of experience; $235 for Deborah Collins, mid-level associate with six years of experience; and $375 for David Pearline, co-counsel with thirty-seven years of experience. Plaintiff additionally requests the following hourly rates for the paralegals who worked on the case: $100 for Skylar Gallagher, paralegal with five years of experience; $125 for Angela Mastin, paralegal with fifteen years of experience; and $150 for B. Thomas Reed,

19

attorney with over thirty-five years of experience but acting as a paralegal for this case.[5]

### Requested Rates

| Name | Rate Requested |
|---|---|
| Ann Sullivan | $ 400 |
| Melissa Picco | $ 315 |
| Deborah Collins | $ 235 |
| David Pearline | $ 375 |
| Angela Mastin (para) | $ 125 |
| Skylar Gallagher (para) | $ 100 |
| B. Thomas Reed (para) | $ 150 |

Plaintiff offers a declaration by attorney Harris D. Butler, III, and a declaration by attorney James H. Shoemaker, Jr., in support of the reasonableness of these fee amounts. Pl.'s Opening Br. Ex. 3-4. Both attorneys agree that all of the rates Plaintiff requests are reasonable for the type of work performed in light of each attorney's and paralegal's respective amount of experience. Id. In response, the Navy offers the declaration of employment law attorney Dean T. Buckius who provided the following as employment law market rates in Norfolk, Virginia: $350/hour for partners, $250/hour for senior

---

[5] Mr. Reed is a licensed attorney in the state of Virginia, but during the period of time he worked on behalf of the Plaintiff he was not working as an attorney, but was instead performing work as a paralegal for the Plaintiff. Shoemaker Decl., ECF No. 341-4, at 4 n.1.

associates (7-8 years experience), $225/hour for mid-level associates (4-6 years experience), $200/hour for junior associates (1-3 years experience), and $110-125/hour for paralegals. Buckius Decl. 1.

In determining the reasonable rates, the Court is required to consider the relevant Johnson factors.[6] Barber, 577 F.2d at 226 n.28. First, the Court evaluates Johnson factor two, the novelty and difficulty of questions raised, and Johnson factor three, the skill required to perform the legal services of the various attorneys and paralegals. This case required a significant expenditure of time and labor involving complex legal issues in a niche area of employment discrimination law, and while the Court will make appropriate adjustments to the time and labor expended, the Court finds that the hourly rates requested by Plaintiff are appropriate for the novel and difficult questions raised in this specialized area of law. As the Court observed above, Plaintiff vigorously litigated and prevailed on significant legal issues throughout the litigation that addressed novel and difficult questions requiring significant skill. These issues included, for example, the Court's summary judgment ruling that the Navy and TCA were joint employers, and that, based upon the facts before it, there was a

---

[6] While the Court considers the Johnson factors out of numeric order, the Court does so for analytic clarity by evaluating factors together that analyze closely related topics.

genuine issue of material fact regarding the reasonableness of TTY as an accommodation in the factual circumstances presented to the Court.  Sept. 2015 Op. & Order 113-14; see Flame S.A. v. Indus. Carriers, Inc., No. 2:13-CV-658, 2014 WL 7185199, at *6 (E.D. Va. 2014) (authorizing the requested hourly rate because of each attorney's "skillful and proficient handling" of the legal issue).

Next, the Court considers Johnson factor four, the opportunity costs in pressing the litigation, Johnson factor six, the attorney's expectations at the outset of the litigation, and Johnson factor seven, the time limitations of the case.  Plaintiff represents that the Sullivan Legal Group is a small law firm without significant financial resources. Because it is a small firm, representing a client on a contingent fee basis in what became a large case requiring much of the firm's available time, taking on this case necessarily involved loss of other opportunities, thus justifying a higher rate than if there were no such lost opportunities.  Counsel also expected the case to progress more quickly, similar to other cases in the Eastern District of Virginia, but due to the Navy's vigorous litigation regarding the significant legal and factual issues presented by the case, it took substantially longer than expected and cost counsel the opportunity to represent other paying clients.  Nevertheless, despite the

ultimate length of time between filing the complaint and final judgment, the Court notes that the Court's pretrial order imposed a tight timeline for discovery and pretrial motions in this case.  For a small firm, such as the Sullivan Law Group, such time limitations, in light of the vigorously litigated nature of the case, likely meant that this case almost fully occupied the resources of the firm at times.

Next, the Court evaluates Johnson factor ten, the asserted undesirability of the case within this legal community, and Johnson factor eleven, the nature of the professional relationship between Plaintiff and her attorneys.  Under Johnson factor ten, the Court considers Plaintiff's representation that the case was undesirable because "it involved going against the Navy in a 'Navy town' [where] the community is very supportive of its larger employer," and because the case could perpetuate the "perception that deaf employees may not be competent to provide medical services."  Pl.'s Opening Br. 21.  The risk inherent in taking on such undesirable litigation justifies a rate higher than might otherwise be the case.  Regarding Plaintiff's professional relationship with her counsel, it is undisputed that counsel had a longstanding relationship with Plaintiff beginning during the course of her efforts to seek a reasonable accommodation before suit was filed, and the Court perceived from Plaintiff's testimony that she felt strongly that

23

she was seeking to vindicate an important principle in employment disability discrimination law. Such devotion to principle by a client often results in greater challenges for counsel in contingent fee cases.

The Court further considers Johnson factor five, the "customary hourly rate of compensation" charged to clients for similar work, Daly v. Hill, 790 F.2d 1071, 1077 (4th Cir. 1986) (internal citations omitted), and Johnson factor twelve, attorney's hourly fee awards in similar cases, Grissom, 549 F.3d at 323 (evaluating the approved hourly rates in cited cases as examples of "similar fee awards in like cases"). In evaluating Johnson factor five, the Court considered the affidavits submitted by both parties regarding reasonable hourly rates for the specific legal work in this case and the customary hourly rates typically charged to clients for similar work by Plaintiff's attorneys and their paralegals in similar cases. See Rum Creek Coal, 31 F.3d at 175 (determining that the customary rate is the rate that counsel could command in the market based upon the rates paid to attorneys of "comparable skill in similar circumstances" and counsel's own typical fees for "similar services in similar circumstances"). Although the Navy has noted that at least one attorney is seeking an award based on an hourly rate that is higher than his normal hourly rate to clients, the Court again notes that a reasonable hourly

24

rate for a fee petition is the "relevant market" rate. <u>Rum Creek Coal</u>, 31 F.3d at 175; <u>Trimper v. City of Norfolk, Va.</u>, 58 F.3d 68, 76 (4th Cir. 1995) ("[T]he great weight of the law . . . holds that the proper measure of fees is the prevailing market rate in <u>the relevant market</u>, and not the rate charged by the actual attorney in question."). Recovery at the market rate does not constitute a windfall, but merely reflects the rate that counsel <u>could</u> command if counsel charged the market rate for their services. <u>See JP ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty.</u>, 641 F. Supp. 2d 499, 516 (E.D. Va. 2009) (authorizing an hourly rate of $300 based upon the market and the attorney's relevant experience instead of the discounted rate of $165 per hour that the attorney would have charged the client); Pearline Suppl. Decl. 1, ECF No. 370-1 ("I have chosen a normal hourly rate that is below the market rate so that middle class individuals can afford my services, which provides access to justice for clients when there is no fee shifting statute in play."). Therefore, the Court has considered the customary hourly fees charged to clients for similar work and compared it to those hourly fees charged in this case.

   In determining the reasonable rate within the relevant market, under <u>Johnson</u> factor twelve the Court considers the hourly rate awarded in similar cases. <u>E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs</u>, 724 F.3d 561, 572

(4th Cir. 2013) ("[P]rior fee awards constitute evidence of a prevailing market rate that may be considered in fee-shifting contexts."). Because the parties have cited to so few employment law attorney fee cases from the Norfolk Division, the Court broadly surveyed the attorney's fee awards in recent employment law cases in the entire Eastern District of Virginia and attorney's fee awards in other types of cases within the Norfolk Division of the Eastern District of Virginia in order to assist it in determining what an hourly attorney fee award would be for a similar case in the Norfolk Division.[7]  Id. at 572

---

[7] See Taylor v. Republic Servs., Inc., No. 1:12-CV-00523-GBL, 2014 WL 325169, at *5 (E.D. Va. 2014) (authorizing in the Alexandria division of the Court the following hourly rates for attorneys specializing in employment law: $600 for attorney with twenty-nine years of experience; $475 for attorney with fourteen years of experience, $400 for attorney with seventeen years of experience, and $325 for attorney with three years of experience); Stewart v. VCU Health Sys. Auth., No. 3:09CV738-HEH, 2012 WL 1120755, at *1 (E.D. Va. 2012), aff'd, 479 F. App'x 459 (4th Cir. 2012) (authorizing in the Richmond division of the Court the following hourly rates for attorneys specializing in employment law:  $470 for lead counsel with more than thirty years of experience, $360 for attorney with more than ten years of experience, $295 for a "highly efficient" fifth-year associate, $265 for a third-year associate, and $180 for a paralegal with more than ten years of experience in federal litigation); Porter v. Elk Remodeling, Inc., No. 1:09-CV-446, 2010 WL 3395660, at *7 (E.D. Va. 2010) (authorizing in the Alexandria division of the Court an hourly rate of $380 for an employment law attorney with sixteen years of experience); see also Carr v. Rest Inn, Inc., No. 2:14-CV-609, 2015 WL 5177600, at *4 (E.D. Va. 2015) (finding in the Norfolk division of the Court that an hourly rate of $275 and $310 would be reasonable for a lawyer who successfully resolved a Fair Labor Standards Act case); Two Men & A Truck/Int'l, Inc. v. A Mover Inc., 128 F. Supp. 3d 919, 927 (E.D. Va. 2015) (approving in the Norfolk division of the Court in an intellectual property case hourly rates of $600 for a partner, $400 for an associate, and $250 for a paralegal); Lismont v. Alexander Binzel Corp., 47 F. Supp. 3d 443, 459 (E.D. Va. 2014) (authorizing in the Norfolk division of the Court in a patent case hourly rates of $550 for an attorney who had practiced for thirty-eight years but only $170 for a first year associate); Alexander v. Se. Wholesale Corp., No. 2:13CV213, 2014 WL 1165844, at *11 (E.D. Va. 2014) (finding in the Norfolk division of the Court an hourly rate of $390 to be reasonable for an experienced litigator in consumer fraud cases); JTH Tax, Inc. v. Grabert, 8

("[W]e have held that '[e]vidence of fee awards in comparable cases is generally sufficient to establish the prevailing market rates in the relevant community.'" (quoting Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 251 (4th Cir. 2004))).

Finally, with respect to Johnson factor nine, the Court evaluates the experience and reputation of each attorney. Plaintiff relies on two recent cases from the Norfolk division of the Court in support of her argument that the requested rates are reasonable in light of each attorneys' years of experience, Prison Legal News v. Stolle, 129 F. Supp. 3d 390, 403 (E.D. Va. 2015), aff'd, No. 15-2197, 2017 WL 888234 (4th Cir. Mar. 6, 2017), and Virginia-Pilot Media Companies, LLC v. Dep't of Justice, No. 2:14CV577, 2016 WL 4265742, at *5 (E.D. Va. 2016). Pl.'s Opening Br. 22-23. Similar to the attorneys in Prison Legal News, both Ms. Sullivan and Mr. Pearline have nearly forty years of experience, with extensive experience in the niche legal subject area of employment discrimination law. See Prison Legal News, 129 F. Supp. 3d at 403 (authorizing an hourly rate of $400 for attorneys with forty-six and thirty-eight years of experience in a constitutional law case from the Norfolk Division of the Eastern District of Virginia). Ms. Picco has

F. Supp. 3d 731, 738 (E.D. Va. 2014) (finding in the Norfolk division of the Court an hourly rate of $225 to be reasonable for a fifth-year associate acting as lead counsel).

nineteen years of experience, an amount substantially higher than the Navy's proffered "senior associate" category of 7-8 years of experience, but is charging a rate lower than a partner. See id. (authorizing an hourly rate of $325 for an attorney with eighteen years of experience). Ms. Collins usually charges an hourly rate of $255-265 but is only requesting $235, a market rate consistent with her experience as established by Mr. Butler's and Mr. Shoemaker's declarations and within $10 of the market rate listed by Mr. Buckius. See Virginia-Pilot, 2016 WL 4265742, at *5 (authorizing as reasonable a rate of $235 per hour for an attorney with five years of experience). Finally, the rates requested by paralegals Mastin and Gallager are within or below the reasonable rates proffered by the Navy. Mr. Buckius's declaration stated that a reasonable paralegal hourly rate is $110 to $125. Buckius Decl. 1. Plaintiff is requesting $100 for Ms. Gallagher, a rate lower than that proffered by Mr. Buckius, and $125 for Ms. Mastin, a paralegal with fifteen years of experience. As these rates are within or below the range proffered by the Navy, the Court finds these rates to be reasonable. With regard to Mr. Reed, who was a licensed Virginia attorney but not then practicing, the Court notes that he acted as a paralegal in this case and assisted with trial preparation based upon his over three decades of trial

experience. The Court finds it reasonable to use an experienced lawyer acting as a paralegal and requesting only $150 per hour to accomplish trial preparation tasks instead of using an attorney with a higher hourly rate. See Virginia-Pilot, 2016 WL 4265742, at *5 (finding as reasonable an hourly rate of $155 for a paralegal with over 20 years of experience with the law firm). Thus, having considered all of the relevant Johnson factors, the Court finds that the hourly rates requested by Plaintiff are reasonable.

### b. Reasonable Hours

As indicated above, Plaintiff is entitled to attorney's fees as a prevailing party who was awarded more than nominal damages. Therefore, the Court must next determine the hours that were "reasonably expended." Hensley, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" (quoting S. Rep. No. 94–1011, p. 6 (1976))).

Before seeking an award, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. Representing that it has complied with this obligation, Plaintiff has submitted

billing records[8] and seeks compensation for the following hours expended in litigating this case:

### Requested Hours

| NAME | HOURS | | |
|------|-------------|--------------|-----------------------------|
|      | LITIGATION  | FEE PETITION | SUPPLEMENTAL FEE PETITION    |
| Ann Sullivan | 1,173.2[9] | 40.3 | 69.5 |
| Melissa Picco | 621.8[10] | 12.2 | 49.1 |
| Deborah Collins | 631.3 | 46.1 | 115.8[11] |
| David Pearline | 110.0 | 63.25 | 42.333 |
| Angela Mastin (para) | 598.7 | 77.2 | 73.7 |
| Skylar Gallagher (para) | 747.3 | | |
| B. Thomas Reed (para) | 367.2 | | |

---

[8] The Navy challenges Plaintiff's billing invoices as not being a "contemporaneous" record because the date "9/22/2016" is listed in the upper right hand corner of each billing invoice, which, according to the Navy, indicates that the records have been "reconstructed." Def.'s Resp. Br. 16; Jones v. Southpeak Interactive Corp., No. 3:12CV443, 2014 WL 2993443, at *12 (E.D. Va. 2014), aff'd, 777 F.3d 658 (4th Cir. 2015) ("[R]econstructed time entries are not acceptable because it is nigh onto impossible to reconstruct old billing entries accurately.") (internal quotations omitted). Ms. Sullivan's supplemental declaration explains that Sullivan Law Group "has a written policy wherein employees are required to submit time records to me on a daily basis. The records are reviewed prior to the authorization of payroll on a weekly basis. . . . The dates on the invoices reflect the date the statement was generated and does not reflect the date the time record was created in the software." Sullivan Supp. Decl. ¶ 1, ECF No. 370-2, at 1. Based upon Ms. Sullivan's declaration giving an explanation for the September 22, 2016 date on each invoice, the Court accepts the billing invoices as contemporaneous records.

[9] Ms. Sullivan's hours are based upon 1,149.8 hours of litigation work billed while employed by Sullivan Legal Group and 23.4 hours of work billed while employed by the law firm of Crenshaw, Ware & Martin, PLC.

[10] Ms. Picco's hours are based upon 600 hours of litigation work billed while employed by the Sullivan Legal Group and 21.8 hours of work billed while employed by the law firm of Crenshaw, Ware & Martin, PLC.

[11] Ms. Collins's hours are based upon 109.30 hours of work on the supplemental motion for attorney's fees and 6.5 hours of work on the reply to the supplemental motion for attorney's fees.

Pl.'s Opening Br. for Att'y Fees 16-17; Pl.'s Opening Br. for
Suppl. Att'y Fees 2; Pl.'s Reply Br. for Suppl. Att'y Fees 7,
ECF No. 376.  The Navy's primary criticism regarding Plaintiff's
calculation of the lodestar figure is its assertion that many of
the hours for which Plaintiff seeks compensation are
inadequately documented and are duplicative or excessive.
Def.'s Resp. Br. 15-23.

In analyzing Plaintiff's fee request and the Navy's
challenges to the hours expended, the Court considers Johnson
factor one, the time and labor expended.  Barber, 577 F.2d at
226 n.28.  In order to properly determine the reasonable time
and labor expended in light of the case's time restrictions, the
Court reduces hours where documentation is "inadequate" and
reduces hours that are "excessive, redundant, or otherwise
unnecessary."  See Hensley, 461 U.S. at 434.

Plaintiff submitted over five hundred pages of exhibits
documenting the hours billed in this case.  See Opening Br. Mot.
for Fees, ECF No. 341; Reply Br. Mot. for Fees, ECF No. 370;
Opening Br. Supp. Suppl. Mot. for Fees, ECF No. 373; Reply Br.
Suppl. Mot for Fees, ECF No. 376.  The Court finds that
Plaintiff has submitted sufficient evidence to demonstrate that
a fee award is appropriate as to all counsel who worked on this

case, as well as the three paralegals.[12]   However, a review of the billing records submitted by Plaintiff reveals that, despite the fact that the records are generally thorough and detailed, Plaintiff has failed to demonstrate that all of the claimed hours are "reasonable."   In considering the hours billed by the various attorneys and paralegals, and the explanation of the tasks performed by such individuals, as explained below, the Court finds that inadequate documentation was provided for certain hours and that there was some degree of unnecessary duplication of efforts. Hensley, 461 U.S. at 434.

     i. Johnson Factor One: Vagueness and Billing Errors

In analyzing the time and labor expended according to Johnson factor one, the vast majority of Plaintiff's requested time billed for attorney's fees appears well-documented, directly related to the litigation, and reasonable.   However, some billing entries do not provide sufficient detail for the Court to determine that the time and labor expended were reasonable because the billing entries were vague, contained block entries, or contained mathematical errors.

---

[12] Work completed by paralegals is compensable as part of an attorney's fee award. Missouri v. Jenkins by Agyei, 491 U.S. 274, 285 (1989) (finding that it was a "self-evident proposition that the 'reasonable attorney's fee' provided for by statute should compensate the work of paralegals, as well as that of attorneys").

A number of Plaintiff's billing entries are vague and lack sufficient facts to identify the nature of the work performed.[13] While such entries might be sufficient on a client bill where the client is familiar with the progress of the work, it is not sufficient for an attorney's fee request such as this.   For example, on April 3, 2014, Ms. Sullivan billed for a "conference regarding response to statute of limitations defense."   ECF No. 341-1, at 10.   However, the entry does not specify any other person involved in this conference.   On February 4, 2015, Ms. Sullivan billed 0.9 hours for a "review [of] Navy's document production," but the entry fails to indicate what documents were reviewed.   Id. at 14.   On February 3, 2016, Ms. Collins begins her entry with "Prepare for hearing" for 0.6 hours, but fails to delineate what the topic of the hearing was or what she did to prepare.   ECF No. 341-10, at 25.   Entries for May 28-29, 2015

---

[13] The Navy also argues that Plaintiff billed a total of sixty-eight hours for two attorneys and three paralegals to prepare a "chronology," but failed to specify any details regarding what the chronology included, how it was used, why it was necessary, or why it took sixty-eight hours to complete.   See Buckius Decl. 6 (detailing the hours spent on the "chronology" as follows: Ms. Mastin - 4.5 hours, Ms. Collins - 26.3 hours, Mr. Reed - 1 hour, Ms. Gallagher - 33.3 hours, Ms. Sullivan 3.2 hours).   Declarations by Plaintiff clarify that this "chronology" was a master document for use in trial preparation and trial strategy which included citations to deposition testimony, deposition exhibits, and trial exhibits.   Plaintiff asserts that this master organizational document "was essential to the management of the thousands of documents produced by [the] Navy."   Gallagher Suppl. Decl. ¶ 8, ECF No. 370-7, at 3.   The Court observes that the factual complexity of this case is reflected in the Court's September 22, 2015 Opinion and Order in which the "factual and procedural history" of the case spans thirty-two pages.   Sept. 2015 Op. at 2-34.   Therefore, the Court finds that spending a substantial amount of time to organize the discovery is reasonable in a complex case such as this.

state that Ms. Gallagher (paralegal) spent 12 hours revising the opposition to the Navy's motion for summary judgment, but does not provide any detail as to what Ms. Gallagher's editing contribution entailed. ECF No. 341-13, at 19. Similarly, billing records reflect that Ms. Gallagher spent 16.5 hours revising and finalizing the brief in support of Plaintiff's motion for summary judgment, but fails to specify what Ms. Gallagher did beyond what the experienced attorneys writing the brief already had done. Id. at 20. Ms. Gallaher's billing entry for October 1, 2015, states that she "prepare[d] for Settlement Conference and [took] two trips to courthouse regarding same," and the entry for October 2, 2015, states that she "prepare[d] for Final Pretrial Conference and [took] trips to courthouse regarding same," but does not explain what she did to prepare for the final pretrial conference or separate out the time for preparation and time for travel. Id. at 25. The Court is unable to adequately review the fee requested without more detail, and the Court cannot parse the proper billing amount when litigation activity is mixed with travel in a single billing entry.

Some of Plaintiff's billing entries are "block billing" entries which list multiple activities without delineating the time spent on each activity. Block billing entries are disfavored in fee award cases. See Faircloth v. Colvin, No.

34

2:13CV156, 2014 WL 5488809, at *8 (E.D. Va. 2014) (holding that it was improper to use "block billing" because it commingles compensable work with non-compensable work).  For example, on August 24, 2015, Ms. Sullivan billed 3.2 hours under the entry: "Identify issues and questions judge might pose at summary judgment hearing and prepare for argument on summary judgment and confer with associate."  ECF No. 341-1, at 38.  It is unclear from the entry whether the entire 3.2 hours constituted a conference with the associate or whether the conference was some shorter period.  On April 6, 2016, Ms. Picco billed 3.5 hours under the entry: "Finalize brief and confer with associate."  ECF No. 341-5, at 38.  Unfortunately, it is impossible for the Court to determine how much of the 3.5 hours was devoted to brief writing and how much to conferring with an associate.  Additionally, the entry fails to specify the topic of the brief or what the conference with the associate was about.  On January 14, 2016, Ms. Collins billed 0.9 hours with the entry: "draft correspondence . . . to expand the scope of granted testimony, attend to strategy with partner regarding same, revise same."  ECF No. 341-10, at 23.  While the entry itself is cryptic, it is also unclear how much of this time was spent conferring with the partner and how much time was spent drafting correspondence.

35

Additionally, there appear to be mathematical errors contained in some entries.  For example, on January 13, 2016, Ms. Sullivan billed a total of 5.8 hours but only listed specific tasks totaling 4.8 hours.  ECF No. 341-1, at 45.  On February 4, 2016, Ms. Picco billed 3.9 hours but only provided documentation for a total of 3.6 hours.  ECF No. 341-5, at 34. On January 8, 2016, Ms. Collins billed 8.5 hours but only documented tasks totaling 7.9 hours.  ECF No. 341-10, at 22.  On February 9, 2016, Ms. Collins billed 14.3 hours but only documented tasks totaling 13.3 hours.  Id. at 26.  On April 16, 2015, Ms. Gallagher billed 3.6 hours but only documented tasks totaling 2.6 hours.  ECF No. 341-13, at 15.  On September 15, 2015, Ms. Gallagher billed 4.6 hours, but only listed tasks totaling 3.6 hours, and on September 22, 2015, Ms. Gallagher billed 5.2 hours, but only listed tasks totaling 2.6 hours.  Id. at 24.  On January 28, 2016, Mr. Reed billed 8.5 hours but only listed tasks totaling 8 hours.  ECF No. 341-15, at 8.[14]

ii. Johnson Factor One: Duplicative and Excessive Work

The Court next considers whether Plaintiff overstaffed the case such that work was excessive at times, and whether some

---

[14] The Court notes that errors in billing also occurred to the disadvantage of Plaintiff, such as on February 8, 2016 when Ms. Collins documented tasks totaling 6.8 hours of work but only billed 6.5 hours, ECF No. 341-10, at 26, or May 8, 2015 when Ms. Gallagher documented tasks totaling 8 hours of work but only billed 7.4 hours, or on May 12, 2015, when Ms. Gallagher documented tasks totaling 11.6 hours of work but only billed 3.5 hours, ECF No. 341-13, at 18.

billed hours were duplicative of other work performed. See Doe,

656 F. App'x at 656 (affirming the district court's twenty-five

percent reduction in attorney billable hours for excessiveness);

Faircloth, 2014 WL 5488809, at *9 (refusing to compensate an

attorney for editing and reviewing another attorney's work). In

evaluating whether some of Plaintiff's work was duplicative and

excessive, the Court considers the Johnson factors analyzing the

difficulty of the questions raised in the litigation, the skill

required to perform the services rendered, and the time

limitations imposed by the circumstances of the case.

### (1) Litigation Hours

The Navy argues that Plaintiff overstaffed the case during

litigation in the number of attorneys and paralegals that

prepared for and attended court proceedings. Def.'s Resp. Br.

18. The Navy specifically points to the July 17, 2015 discovery

hearing and the summary judgment hearing as examples of

overstaffing hearings. According to the Navy, it was excessive

for Plaintiff to bill over sixteen attorney hours and twenty-one

paralegal hours in preparation for the July 17, 2015 hearing on

seven motions that had already been fully briefed. See Def.'s

Resp. Br. 20 (noting that in preparation for the July 17, 2015

hearing, Ms. Sullivan billed at least seven hours, Mr. Pearline

billed over nine hours, paralegal Gallagher billed over fourteen

hours, and paralegal Mastin billed over seven hours). The July

17, 2015 discovery hearing lasted two hours and covered seven different motions on different topics, including Plaintiff's motions for sanctions due to discovery disputes and to exclude testimony of two of the Navy's expert witnesses and the Navy's motions to compel answers to interrogatories and to exclude Plaintiff's expert witness. ECF No. 147. To prepare for this hearing, Plaintiff's average preparation time per motion was approximately two hours by attorneys and three hours by paralegals—an amount of time that, subject to the overall reduction in Plaintiff's hours, the Court finds reasonable in relation to the complexity of the legal issues.

The Navy also argues that it was not "necessary or reasonable" for three attorneys and two paralegals to attend the summary judgment hearing on Plaintiff's behalf. Id. At the hearing, the Court heard from counsel on a motion for summary judgment filed by the Navy and a cross-motion for partial summary judgment against the Navy filed by Plaintiff, specifically addressing the joint employer doctrine, the Navy's defense of administrative exhaustion, and Plaintiff's constructive discharge claim.[15] Sept. 2015 Op. at 128. As calculated by Mr. Buckius, Plaintiff billed 15.9 paralegal hours

---

[15] Then-co-defendant TCA also filed a motion for summary judgment on the issue of reasonable accommodation, which the Court heard argument on at the summary judgment hearing. ECF No. 85. The Navy argued first that the Navy was not a joint employer of Plaintiff, but also argued alongside TCA that TTY was a reasonable accommodation.

and 13.7 attorney hours to prepare for and attend the summary
judgment hearing. Buckius Decl. 3. At the hearing, the Navy
was also represented by three attorneys, in addition to the
attorney representing co-defendant TCA. ECF No. 176. Due to
the complexity and potentially dispositive nature of the issues,
and the Navy deeming that three attorneys were necessary for its
own representation, the Court concludes that most of Plaintiff's
hours were reasonably expended to prepare for and attend the
hearing.

The Navy additionally challenges the following hours as
excessive: twenty-four hours for Rule 26(a)(3) disclosures;
eight hours for paralegals to revise Ms. Sullivan's opening
statement; over 200 hours for paralegal Reed to review
depositions and trial exhibits; over-identification of trial
exhibits, most of which were not ultimately used; and a final
pretrial conference that lasted three days with time billed by
two attorneys and two paralegals. Def.'s Resp. Br. 18-21.
While the Navy argues that these hours are excessive, the Navy
does not propose to the Court a specific hour-by-hour reduction
for each documented task. In considering the Navy's arguments,
the Court first observes that this case involved complex legal
issues, was vigorously litigated by both parties, and the Navy
itself staffed the case with three attorneys who themselves
worked collaboratively. See, e.g., Excerpt Trial Tr. (Rule 50

39

Motion) 48-49, ECF No. 331 ("THE COURT: 'Who wrote the brief for you all on the summary judgment on this issue?' MR. SYLVERTOOTH: 'It was a collaborative effort.'"). Having reviewed the records submitted by Plaintiff and the declarations from each outside attorney, the Court finds that some amount of time was reasonably spent by Plaintiff on the specific tasks that the Navy challenged. However, at various hearings Plaintiff appeared somewhat disorganized, such as having inordinate trouble locating documents or not having scrutinized exhibits ahead of discovery dispute proceedings. Moreover, some of Plaintiff's hours appear duplicative. For example, at the September 30, 2015 proceeding to address deposition designations, Plaintiff failed to provide the Magistrate Judge an advance copy of Plaintiff's deposition designations, and when the Court began to review the designations, it quickly became apparent that the parties had not conferred about the objections. The Magistrate Judge directed the parties to work to resolve the objections before the final pretrial conference. However, the final pretrial conference lasted over three days, with the extraordinary length being significantly due to Plaintiff not having scrutinized exhibits ahead of time. As a result, Plaintiff ultimately withdrew dozens of exhibits at the conference.

In addition to the disorganization evidenced at times by Plaintiff, some hours billed appear to be for repetitive work. For example, Mr. Reed billed numerous hours for preparing the cross examination of Jennifer Taylor. However, Ms. Sullivan, Plaintiff's lead attorney, billed 4.2 hours on September 13, 2015 to prepare the examination of "Jennifer Taylor and Plaintiff" and billed 0.4 hours on September 14, 2015 to "review depositions of Jennifer Taylor and summarize." ECF No. 341-1, at 39. The Court considers Plaintiff's preparation level and duplicative work in considering the Johnson factors analyzing counsel's skill in performing the services rendered and the time limitations imposed by the case. For all of the above reasons, the Court concludes that some of counsel's billed hours were duplicative or excessive, and will reduce Plaintiff's litigation hours as an overall percentage accordingly.

(2) Fee Petition Hours

The Navy argues that Plaintiff's "fees-on-fees" hours are duplicative because attorneys and paralegals repeatedly rewrote one another's work. Def.'s Resp. Br. 23. It is "well settled that the time spent defending entitlement to attorney's fees is properly compensable" under a fee-shifting statute. Trimper, 58 F.3d at 77 (internal citation omitted). However, if multiple attorneys bill for completing the same work product and the contribution of each attorney is not justified, the billed hours

41

should be reduced for excessiveness. See Rum Creek Coal, 31 F.3d at 180 ("[W]e have also been sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney. Generalized billing by multiple attorneys on a large case often produces unacceptable duplication." (citing Spell, 852 F.2d at 762)).

In evaluating the time and labor reasonably expended under Johnson factor one, the Court concludes that there is some merit to the Navy's concerns regarding Plaintiff's duplication of efforts in preparing the fee petition. Plaintiff's billing records reflect numerous hours spent reviewing and editing affidavits in support of the motion for attorney's fees, without explanation for what each reviewer uniquely contributed. For example, Mr. Pearline billed for drafting Ms. Collins's declaration (March 31, 2016), drafting Ms. Sullivan's declaration (April 6, 2016), drafting Ms. Picco's declaration (April 13, 2016), drafting Ms. Gallagher's declaration (April 13, 2016), and drafting Ms. Mastin's declaration (April 13, 2016). ECF No. 341-2. However, Ms. Collins billed to "draft affidavit in support of attorney's fees" and then have a "telephone conference with Mr. Pearline regarding affidavits." ECF No. 341-10, at 32 (Sept. 9, 2016). Overall, Ms. Collins billed 52.6 hours of work related to Plaintiff's attorney's fee petition, in addition to the 105.58 hours that Mr. Pearline is

requesting for the same.  The redundancy of work is illustrated by the drafting of Ms. Picco's declaration.  After Mr. Pearline drafted Ms. Picco's declaration, Ms. Picco, an experienced attorney, billed 12.5 hours for work done "revising" her declaration and preparing information for the attorney's fee petition, ECF No. 341-5, at 40. After Mr. Pearline and Ms. Picco, both attorneys with multiple decades of experience, had spent hours writing and editing Ms. Picco's declaration, Ms. Mastin billed 0.2 hours to "review" and 2.7 hours to "revise" Affidavit of Ms. Picco (Sept. 15, 2016), 4 hours to "review pleadings, docket and files for edits and citations" for Ms. Picco's affidavit (Sept. 16, 2016), 1 hour to "edit" Ms. Picco's affidavit (Sept. 19, 2016), 0.3 hours completing "edits and cites" to Ms. Picco's affidavit (Sept. 20, 2016), and another 0.5 hours to make "final revisions" to attorney affidavits including that of Ms. Picco (Sept. 21, 2016).  ECF No. 341-14, at 28-30.  Therefore, the Court concludes that Plaintiff billed hours that appear excessive in the preparation of the fee petition, and will reduce Plaintiff's fee petition hours as an overall percentage accordingly.  See Daly, 790 F.2d at 1080 (reducing as duplicative an attorney's hours for work performed on a project when a different attorney was "primarily responsible" for the project).

43

### iii. <u>Johnson</u> Factor One: Billing Judgment

In determining the reasonableness of the time and labor expended under <u>Johnson</u> factor one, counsel's "'billing judgment' is an important component." <u>Hensley</u>, 461 U.S. at 434 (quoting <u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (1980)). The Court notes that Plaintiff utilized and paid for the services of Karen Paige Thomas, a law school graduate at the time, and now licensed attorney, who provided document review services (149 hours) and Leslie Crocker, an experienced legal assistant who provided redacting and other trial support work (71 hours). Sullivan Decl. ¶ 18, ECF No. 341-1, at 5. Plaintiff does not request any reimbursement for the work performed by either Ms. Thomas or Ms. Crocker. <u>Id.</u> In addition, Plaintiff represents that $111,354.00 was written off prior to submission of the fee petition for entries that "might have been construed as clerical time for the paralegals which totaled in excess of 300 hours for each paralegal." Sullivan Suppl. Decl. ¶ 21, ECF No. 370-2.

Plaintiff also represents that she segregated out the work that was solely related to TCA, at a value of $238,010.00, and did not include it within the fee petition. <u>Id.</u> ¶ 18. Such omitted work included time spent preparing witness outlines for TCA witnesses, attending depositions for TCA witnesses, settlement negotiations with TCA, responding to TCA's motion for summary judgment, and preparation of the portion of responses to

44

the joint pleadings with the Navy that addressed only the arguments raised by TCA. Id. ¶ 17. Plaintiff specifically omitted any time editing responses to TCA's motions and omitted time spent responding to case law cited only by TCA. Id. ¶ 19.

### iv. Reasonable Hours Summary

As the Court concludes its evaluation of the reasonableness of Plaintiff's hours, the Court observes that this has been a vigorously litigated case. In resolving one of the many discovery disputes that arose during this case, the Magistrate Judge wrote that Plaintiff's "counsel's actions were deliberate. More troubling, the tactic reflects a history pushing the limits of zealous advocacy which has unnecessarily complicated the process of preparing this case for trial." ECF No. 299, at 5. However, the case was also vigorously litigated by the Navy. According to Ms. Sullivan's Supplemental Declaration, the Navy did not make a settlement offer until September 30, 2015, more than twenty-one months after Plaintiff's complaint was first filed. Sullivan Supp. Decl. ¶ 21. The Navy's settlement offers were less than Plaintiff's out-of-pocket litigation costs, excluding attorney's fees, making it impossible to settle from Plaintiff's perspective. Id.; see McAfee, 738 F.3d at 90 ("[A] district court 'has discretion to consider settlement negotiations in determining the reasonableness of fees but it is not required to do so.'" (quoting Thomas v. Nat'l Football

League Players Ass'n, 273 F.3d 1124, 1130 n.9 (D.C. Cir. 2001))). The Navy's actions during litigation also required Plaintiff to expend unnecessary additional time, such as by requiring motions to compel discovery and requiring the issuance and service of subpoenas through command headquarters in Washington D.C., when counsel could have accepted service for the witnesses. Sullivan Supp. Decl. ¶ 23. Thus, the Court notes that the vigorous litigation of the case by both parties drove up the hours expended on the case.

Having reviewed Plaintiff's submitted documents and considered Johnson factor one, the time and labor expended, the Court makes the following adjustments to the hours requested in order to eliminate hours that Plaintiff has failed to demonstrate were reasonably billed to this case. In making such adjustments, the Court notes that the Navy has identified entries it objects to, but did not tally the total hours it believes to be improper in order to suggest a specific reduction to the Court. See McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.")(internal citations omitted). The Court does, however, find that the Navy's objections, coupled with the Court's obligation to allow an attorney's fee award only to the

extent it is "reasonable," warrants some degree of adjustment to the hours claimed. In re A.H. Robins Co., Inc., 86 F.3d 364, 373 (4th Cir. 1996) ("A court abuses its discretion if it allows a fee without carefully considering the factors relevant to fair compensation." (citing Barber, 577 F.2d at 226)).

To account for work that was not adequately documented such that a paying client would likely have reasonably disputed same upon receiving a bill, the requested "litigation" hours are reduced by ten percent. See supra Requested Hours at 30; see also Hensley, 461 U.S. at 434 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.") (quotation marks and citation omitted). Additionally, the hours attributed to the "fee petition" are reduced by twenty-five percent to reflect the duplication of efforts among attorneys and paralegals. See supra Requested Hours at 30; McAfee, 738 F.3d at 90 (noting that the district court reduced the hours of two lead attorneys by ten percent each because of how they billed their time); Copeland, 641 F.2d at 903 (holding that it was reasonable for a district court to reduce a fee award without performing an item-by-item accounting of the attorney's hours).

Finally, the Court notes that the hours expended on the supplemental fee petition resulted primarily from the Navy's renewed motion for judgment as a matter of law made after the

47

Court previously had carefully considered and denied the same motion. In doing so, the Navy required Plaintiff to expend significant additional time responding to such motion, thereby increasing Plaintiff's attorney's fees. The Court easily finds the hours Plaintiff billed to respond to the Navy's motion to be reasonable. Additionally, due to the Navy's specific objections to Plaintiff's fee petition, Plaintiff was required to spend considerable time submitting forty eight additional pages of responsive declarations. These declarations by Plaintiff are detailed, thorough, and helpful to the Court in evaluating each contention raised by the Navy. As such, the Court finds the time spent to assemble these responses to be reasonable. Thus, the Court makes no reduction to the hours requested by Plaintiff in the supplemental fee petition for the time spent responding to the Navy's post-trial motion and answering the Navy's objections to the fee petition. Accordingly, the Court recognizes the following hours as reasonably spent by Plaintiff in this litigation:

| NAME | HOURS | | | |
|---|---|---|---|---|
| | LITIGATION | FEE PETITION | SUPPLEMENTAL FEE PETITION | TOTAL HOURS |
| Ann Sullivan | 1,055.9 | 30.2 | 69.5 | 1,155.6 |
| Melissa Picco | 559.6 | 9.2 | 49.1 | 617.9 |
| Deborah Collins | 568.2 | 34.6 | 115.8 | 718.6 |
| David Pearline | 99.0 | 47.4 | 42.333 | 188.733 |
| Angela Mastin (para) | 538.8 | 57.9 | 73.7 | 670.4 |
| Skylar Gallagher (para) | 672.6 | | | 672.6 |
| B. Thomas Reed (para) | 330.5 | | | 330.5 |

### c. Lodestar Summary

Based upon the reasonable hours and reasonable rate analysis outlined above, the following table reflects the Court's lodestar calculation, which is the starting point for an attorney's fee award prior to any adjustments in step two or three of the required analysis.

| NAME | HOURS REQUESTED | HOURS AWARDED | RATE | TOTAL |
|---|---|---|---|---|
| Ann Sullivan | 1,259.6 | 1,155.6 | $ 400 | $    462,240.00 |
| Melissa Picco | 661.3 | 617.9 | $ 315 | $    194,638.50 |
| Deborah Collins | 793.2 | 718.6 | $ 235 | $    168,871.00 |
| David Pearline | 215.58 | 188.733 | $ 375 | $     70,774.88 |
| Angela Mastin (para) | 749.6 | 670.4 | $ 125 | $     83,800.00 |
| Skylar Gallagher (para) | 747.3 | 672.6 | $ 100 | $     67,260.00 |
| B. Thomas Reed (para) | 367.2 | 330.5 | $ 150 | $     49,575.00 |
| TOTAL Lodestar Figure | | | | $ 1,097,159.38 |

## 2. Adjustment for Unsuccessful Unrelated Claims

After a lodestar figure is calculated, the Court must determine whether the fee award should be reduced to reflect the time counsel spent on unsuccessful claims that are unrelated to the successful claims.  Robinson, 560 F.3d at 244.  "Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, . . . these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."  Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989).  However, when a plaintiff prevails on some issues but not others and the claims arise "out of a common core of facts, and involve related legal theories," a district court may exercise its discretion to arrive at a reasonable fee award, "either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff."  Id. at 789-90.  Here, the Navy argues that Plaintiff should not be compensated for "fruitless challenges" based upon a number of motions and objections that were ultimately either fully or partially denied.  Def.'s Resp. Br. 22 (listing thirteen motions and objections as "fruitless" efforts by Plaintiff).  The Court observes that there is merit to the Navy's argument that

50

Plaintiff spent time on issues that ultimately were of little or no significance at trial. For example, at the summary judgment hearing before the district court, Plaintiff represented that the "eight second delay" of TTY was a significant issue of material fact. At trial, the Court commented that it relied upon Plaintiff's representation of the importance of the eight second delay to, in part, deny summary judgment, but that as of that moment it had heard "not a word about it in the trial." ECF No. 332, at 36. As noted on the record, that was "really troubling" to the Court due to Plaintiff's prior representation of its significance.[16] Id.

However, while Plaintiff did not prevail upon all of her claims or each motion made throughout the litigation, the Navy acknowledges that Plaintiff's claims arose from "a common core of facts." Def.'s Resp. Br. 24. In light of the common core of facts, the Navy agrees that it would be more appropriate to consider Plaintiff's lack of success on specific claims within the overall adjustment due to Plaintiff's lack of success

---

[16] While this issue is significant to note in the context of awarding plaintiff attorney's fees, as the Court previously ruled, it was not dispositive on the issue of whether a material fact remained for the jury. As the Court explained in ruling on the Navy's renewed Rule 50(b) motion: "[T]he Court stated that 'it may be' that the evidence, including the general evidence of delays, presented by Plaintiff in her case-in-chief 'creates a jury issue on whether or not a TTY would be sufficient to allow Ms. Crump to perform the essential functions of her job,' but it was unfortunate that Plaintiff's summary judgment argument against co-defendant TCA specifically asserted an eight second delay and no witness had specifically referenced such eight second delay during the case-in-chief." Nov. 30, 3016 Mem. Op., ECF No. 368, at 7.

51

overall instead of a specific reduction in hours. Id. ("The Navy does not contend that an adjustment [by subtracting fees for hours spent on unsuccessful claims unrelated to successful ones] can be readily calculated."); Hensley, 461 U.S. at 430 (noting that the Senate Report authorizing attorney's fees in civil rights cases cited numerous cases approvingly that authorized attorney's fees to prevailing parties despite their losses on "certain minor contentions" throughout the litigation). Thus, the Court makes no adjustment at this stage of analysis and moves on to considering Plaintiff's overall success on the merits.

### 3. Adjustment for Degree of Success

The final step in determining a reasonable fee award is calculating a percentage of the lodestar figure that takes into account the "'degree of success enjoyed by the plaintiff.'" Grissom, 549 F.3d at 321 (quoting Johnson, 278 F.3d at 337). As described in greater detail above, when a plaintiff achieves only "partial or limited success," such as in this case, the lodestar figure may be excessive notwithstanding the fact that all claims were "interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. In concluding that an adjustment to the lodestar figure is appropriate in this case, the Court notes that Johnson factor eight, which evaluates the "amount in controversy and the results obtained," was not

52

subsumed within the prior analysis determining the lodestar figure, but is considered in the adjustment to the lodestar figure.  McAfee, 738 F.3d at 89-90 (emphasis added); see also Farrar, 506 U.S. at 114 (internal quotation marks omitted) ("[T]he degree of the plaintiff's overall success goes to the reasonableness of a fee award.").

This case was, according to one of the Magistrate Judges involved in resolving discovery disputes, "one of the most thoroughly litigated ADA cases . . . ever seen in this court." Tr. of Sept. 30, 2015 Proceeding, ECF No. 206, at 25.  In this intensely litigated case, it is readily apparent that both Plaintiff and the Navy succeeded in certain aspects of this litigation.  The Navy succeeded when the Court granted the Navy summary judgment on Plaintiff's constructive discharge claim, holding that "no reasonable finder of fact could conclude that, if the Navy failed to accommodate Plaintiff, it did so with the intent to force Plaintiff to quit." Sept. 2015 Op. at 128.  The Navy also demonstrated that Plaintiff was not entitled to the substantial amount of damages that she sought.  Plaintiff sought recovery of substantial punitive, compensatory, and equitable damages for a variety of purported harms, including recovery for substantial childcare expenses, recovery for losses relating to two rental properties in the amount of $87,870.75, recovery for the loss of appreciation for stocks she had to sell in the

amount of $129,281.15, recovery for the loss of a "tax benefit" relating to her 401k in the amount of $2,594.00, and recovery for interest paid on a loan to pay her attorney in the amount of $3,166.67.  Pl.'s 2d Supp. Rule 26(1)(1) Disclosures, ECF No. 79-3, at 16-18.  In addition to these damages, Plaintiff sought "compensatory damages for emotional pain and suffering, damage to professional reputation, loss of opportunities for advancement due to the prolonged period of unemployment, emotional pain and suffering, emotional distress, inconvenience, mental anguish, embarrassment, loss of self-esteem, loss of enjoyment of life, anxiety, stress, injury to professional standing, character and reputation, injury to credit and financial anxiety, consequential damages and other injury." Id. at 19.  Finally, Plaintiff also sought punitive damages against the Navy.  Id.  Following a two-week jury trial, the jury returned a verdict for Plaintiff on the failure to accommodate claim but awarded her none of her requested damages.  Verdict Form, ECF No. 314.

Notwithstanding these matters where the Navy enjoyed significant success, it is clear from the record that Plaintiff is the "prevailing party."  In a one hundred and twenty-nine page opinion, the Court granted Plaintiff's motion for summary judgment regarding the Navy's status as Plaintiff's employer, holding that "[f]or the purposes of Rehabilitation Act

liability, the Navy was Plaintiff's employer under the joint employer doctrine," and simultaneously denied the Navy's motion for summary judgment on the defense of administrative exhaustion because the Court determined that there was a genuine dispute of material fact. Sept. 2015 Op. at 128. Having established that the Navy was a joint employer, Plaintiff achieved a significant legal victory when the jury found that the Navy failed to provide Plaintiff a reasonable accommodation as required by the Rehabilitation Act. Verdict Form, ECF No. 314. Moreover, upon hearing additional evidence on Plaintiff's request for equitable relief, the Court awarded Plaintiff back pay damages of $40,842.42, plus pre-judgment and post-judgment interest. Sept. 2016 Op. at 337.

Considering all of the above, the Court concludes that a **55% reduction in attorney's fees** is appropriate in this case to reflect Plaintiff's tangible victory by prevailing on the merits before the jury and receiving a substantial award of back-pay by the Court, while also taking into account the Navy's complete success in defending against Plaintiff's claim of constructive discharge and in persuading the jury to award no compensatory damages on Plaintiff's reasonable accommodation claim. Hensley, 461 U.S. at 436-37 (noting that "[t]here is no precise rule or formula" for reducing a fee award for a lack of success but the court "may simply reduce the award"); Deming v. Kanawha City

Co., 852 F.2d 565, 565 (4th Cir. 1988) (upholding under Hensley a district court's seventy-five percent reduction of attorney's fees due to appellants' limited success). The total attorney's fee award in this case is therefore reduced from $1,097,159.38 to $493,721.72. Such total figure represents a fee of $461,873.02 to Sullivan Legal Group, Plaintiff's counsel, and a fee of $31,848.70 to Mr. Pearline, Plaintiff's co-counsel.

## IV. Conclusion

Having performed the required "lodestar analysis," having considered all of the Johnson factors, Barber, 577 F.2d at 226 n.28, and having adjusted the lodestar figure to reflect the "degree of success achieved" by Plaintiff, the Court **GRANTS** Plaintiff's motion for attorney's fees and litigation expenses and Plaintiff's motion for supplemental attorney's fees. ECF No. 340; ECF No. 372. After making a downward adjustment to the total hours requested by Plaintiff and adjusting for Plaintiff's overall success, the Court hereby **AWARDS** attorney's fees to Plaintiff in the amount of $493,721.72. Such total figure represents a fee of $461,873.02 to Sullivan Legal Group, Plaintiff's counsel, and a fee of $31,848.70 to Mr. Pearline, Plaintiff's co-counsel.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____
/s/
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 27 , 2017